2015 IL App (2d) 141183
No. 2-14-1183
Opinion filed September 23, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| CLIFFORD J. McILVAINE, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14-ED-35 |
| | ) | |
| THE CITY OF ST. CHARLES, | ) | Honorable |
| | ) | David R. Akemann, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Clifford J. McIlvaine, appeals from an order of the circuit court of Kane County

dismissing with prejudice his complaint against defendant, the City of St. Charles (City).    The

complaint attempted to state causes of action for inverse condemnation, violation of due process,

and property damage.    McIlvaine generally alleged that the City physically invaded his property

under the guise of making repairs by installing a shingle roof that he did not want or authorize.

The suit was consolidated in the trial court with No. 10-CH-881, an action by the City seeking to

repair certain code violations at McIlvaine's residence.    We affirm.

¶ 2                                          I. BACKGROUND

¶ 3     McIlvaine is the beneficial owner of real property at 605 Prairie Street in St. Charles, Illinois.   The property is improved with a residence.   On August 5, 1975, the City issued McIlvaine a building permit for the construction of a garage.   On May 19, 1976, McIlvaine obtained another building permit for remodeling and the construction of an addition to the residence.   As of 2013, McIlvaine had not completed either project.

¶ 4     In 2010, the City filed suit to declare the building permits null and void and to compel McIlvaine to complete construction in accordance with the City's code.   On August 2, 2011, McIlvaine and the City entered into a "consent decree & order."   After McIlvaine failed to complete construction pursuant to the terms of the consent decree, the City sought a court order pursuant to section 11-31-1 of the Illinois Municipal Code (Code) (65 ILCS 5/11-31-1 (West 2010)) to repair the premises.

¶ 5     At the hearing on the City's application for a repair order, the City presented the following evidence regarding the roof.   Bob Vann was the City's building and code enforcement division manager.   In his last 20 years in that job, he had been unsuccessful in securing McIlvaine's compliance with the City's code.   The City was never able to determine whether the roofing materials met the code.   The roof, which was covered by a rubber membrane, also presented a safety issue.   Vann testified that there was improper flashing along the chimney and that the covering was not secured and therefore could blow off the roof.   Water could get in between the roof and the walls, penetrating the interior and leading to deterioration and mold.   City inspectors had seen animal tracks on the roof and animals entering through the east eave.

¶ 6     Lieutenant Brian Byrne of the fire prevention unit of the St. Charles fire department noted that the rubber membrane covering the roof was not fastened properly.   Because the

membrane covered the roof, it would be difficult for a firefighter to ventilate the structure. Byrne did not know what type of rubber membrane it was or how it might react to flames.

¶ 7    Contractor James Webb testified for McIlvaine.   He had volunteered to help McIlvaine finish installing the roof, but he had failed to do so.   Webb testified that the roof was a one-of-a-kind, specialty design.   In 50 years of experience, Webb had never seen or installed a roof like it.   It could be installed only when the temperature reached 50 degrees, and over the past two seasons the weather had not cooperated.   Webb also testified that the roof was difficult to install.   On cross-examination, Webb acknowledged that the consent decree provided for a traditional roof to be installed if McIlvaine failed to timely submit plans for the unique roof. Webb further testified that a rubber membrane was not supposed to be used on a roof with a pitch as steep as McIlvaine's.

¶ 8    In argument following the evidence, the City emphasized that it was not seeking to demolish the structure.   Rather, it intended to finish the building according to code so that it could issue an occupancy permit.   The City informed the court that it would install a "conventional roofing system."   The court found that the condition of the property was unsafe and dangerous.   However, the court cautioned that permission to remediate did not extend to "aesthetic issues."

¶ 9    It is undisputed that the City installed a traditional shingle roof.   McIlvaine alleged in the complaint that the City disassembled and discarded the partially installed components of his unique roof.   The City filed a combined section 2-615 and section 2-619 motion to dismiss McIlvaine's complaint.   735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012).   The court granted the section 2-615 motion to dismiss with prejudice and then granted the City's motion for Rule 304(a) language.   Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).   McIlvaine filed a timely appeal.

¶ 10                                II. ANALYSIS

¶ 11    The issue is whether the City's repair using a shingle roof was within its police powers or was instead a "taking" under article I, section 15, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 15).    Article I, section 15, provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law.    Such compensation shall be determined by a jury as provided by law."    Ill. Const. 1970, art. I, § 15.    McIlvaine concedes that section 11-31-1 of the Code permitted the City to make repairs, but he contends that his complaint states a cause of action, because the City exceeded the scope of the court's order by demolishing his unique roof.

¶ 12    Initially, we address the City's argument that we should resolve this appeal under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)) pursuant to the appellate court's authority to affirm on any basis appearing in the record.    See *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008) (the appellate court can affirm the judgment of the circuit court on any basis it finds in the record).    The City argues that McIlvaine forfeited his claim that the installation of a traditional roof was a taking by not raising it at the hearing on the City's application for the repair order.    McIlvaine responds that he had no reason to raise the issue then, because the City's notice under section 11-31-1 did not include notice that the City would demolish the partially installed unique roof.

¶ 13    Section 2-619(a)(9) provides for involuntary dismissal of a complaint where the plaintiff's action is "barred by other affirmative matter avoiding the legal effect of or defeating the claim."    735 ILCS 5/2-619(a)(9) (West 2012).    Here, the City argues that forfeiture is "other affirmative matter."    "[A]ffirmative matter" is " 'in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material

fact contained in or inferred from the complaint.' " *Chicago Title Insurance Co. v. Aurora Loan Services, LLC*, 2013 IL App (1st) 123510, ¶ 11 (quoting *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004)). A forfeiture is the failure to make a timely assertion of a right. See *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005). The right that McIlvaine asserted in his complaint is the constitutional right against the taking of his property for public use without just compensation. As the alleged taking had not occurred when the hearing on the City's application for repair took place, McIlvaine could not have forfeited the right by failing to raise the issue at that time.

¶ 14    We turn now to McIlvaine's contention that dismissal under section 2-615 was improper. A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint based on defects that are apparent on its face. *Estate of Powell v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 15. A section 2-615 motion to dismiss should be granted only when it is apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Powell*, 2013 IL App (1st) 121854, ¶ 15. The court accepts as true all well-pleaded facts and all reasonable inferences to be drawn from those facts. *Powell*, 2013 IL App (1st) 121854, ¶ 15. We review *de novo* the grant of a section 2-615 motion to dismiss. *Powell*, 2013 IL App (1st) 121854, ¶ 15.

¶ 15    McIlvaine attempted to allege three distinct causes of action arising from the City's replacement of his unique roof. However, if the City's conduct was authorized under section 11-31-1, then McIlvaine has no cause of action, however he chooses to couch it. The purpose of section 11-31-1 is to abate a public nuisance. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125 (2004). Although section 11-31-1 interferes with how a property owner chooses to use his land, a property owner does not have a right to allow his property to fall into such

disrepair as to create a public health and safety risk. *Stokovich*, 211 Ill. 2d at 125. Constitutional rights pertaining to private property are subordinate to the police power. *Sherman-Reynolds, Inc. v. Mahin*, 47 Ill. 2d 323, 328 (1970). "[A]n exercise of police power to prevent a property owner from using his property so as to create a nuisance or a risk of harm to others is not a 'taking' in the constitutional sense." *Stokovich*, 211 Ill. 2d at 130. McIlvaine does not dispute the court's finding that the roof presented a safety risk or that the City could exercise its police power to abate the risk of harm the unsafe roof posed. He objects only to the manner in which the City remediated the problem and seeks compensation for his alleged damages.

¶ 16  The complaint alleged that the City "tore out major components" of the partially completed unique roof. It is clear from McIlvaine's brief that he is equating that alteration with the demolition of a structure. Section 11-31-1 addresses the "demolition, repair, or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings" within the territory of the municipality. 65 ILCS 5/11-31-1 (West 2012). McIlvaine asserts that the City demolished his unique roof without following the statutory procedural safeguards pertinent to the demolition of buildings. Section 11-31-1 requires two findings before the court can order demolition: (1) that the building is dangerous and unsafe and (2) that the building is beyond reasonable repair. *Stokovich*, 211 Ill. 2d at 131. The second finding must be based on a comparison of the cost of repair with the value of the building. *Stokovich*, 211 Ill. 2d at 131. Demolition is justified only where repair makes so little economic sense that it is unlikely that an owner would seize any further opportunity to repair. *Stokovich*, 211 Ill. 2d at 131.

¶ 17  The issue in the present case is whether these safeguards apply to the demolition of less than the entire structure. The best indication of legislative intent is the language of the statute.

*Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 18. The statutory language must be given its plain and ordinary meaning. *Hamer*, 2013 IL 114234, ¶ 18. It is improper for a court to read exceptions, limitations, or conditions into the statute that conflict with clearly expressed legislative intent. *Hamer*, 2013 IL 114234, ¶ 18. Here, the statute's plain language applies to the demolition of buildings, not the individual components. "[T]he plain implication" of the statute is that "only in cases where the *structure* is substantially beyond repair is an order for demolition contemplated." (Emphasis added.) *City of Aurora v. Meyer*, 38 Ill. 2d 131, 137 (1967). Consequently, McIlvaine's reliance on *Meyer* and other cases involving the demolition of buildings is misplaced.

¶ 18   The court's order, which is incorporated into the complaint, undisputedly permitted the repair of the unsafe roof. A "repair" is the "restoration to a state of soundness, efficiency, or health." Webster's Third New International Dictionary 1923 (1993). McIlvaine suggests that the City was authorized only to tack the membrane into place and redo the defective flashing. However, that alone would not place the roof into a state of "soundness, efficiency, or health." Basically, the structure would still be without a functioning roof. The police power is not limited to the remediation of dangers that imperil the public generally, but extends even to dangers, such as the risk of flood damage to a home or structural defects, that affect only those directly connected to the property. *Village of Ringwood v. Foster*, 405 Ill. App. 3d 61, 73-74 (2010).

¶ 19   Nor was the City required to repair the roof by installing McIlvaine's unique materials. According to McIlvaine's complaint, his unique roof would be constructed using "sprayed-on fiberglass resin" over the wood. The top of the roof would be metal panels. Polyurethane foam would be sandwiched between the fiberglass resin and the metal panels. Section 11-31-1

is intended to give a municipality an effective tool for protecting citizens from substandard and dangerous housing. *City of Chicago v. Nielsen*, 38 Ill. App. 3d 941, 944 (1976). For that reason, a reasonable, as opposed to a strict, interpretation of the statute is required. *Nielsen*, 38 Ill. App. 3d at 944. Compelling the City to install a one-of-a-kind novelty roof would not be an effective means of accomplishing the needed repairs or be consistent with a reasonable construction of the statute. McIlvaine cites no authority for the proposition that repairs under section 11-1-31 must be made according to the owner's dictates and tastes.

¶ 20    Having determined that the City was authorized by section 11-31-1 and the court's order to repair the roof by installing a shingle roof, we reject McIlvaine's contention that the installation of the shingles and the disassembly of his partial unique roof was an unconstitutional taking. Thus, McIlvaine's reliance on "Takings Clause" jurisprudence is misplaced. We agree with the trial court that the complaint failed to state any cause of action. Accordingly, the court properly dismissed McIlvaine's complaint with prejudice.

¶ 21                                    III. CONCLUSION

¶ 22    The judgment of the circuit court of Kane County is affirmed.

¶ 23    Affirmed.