NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 220206

NO. 4-22-0206

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 16, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CITY OF GENESEO, an Illinois Municipal Corporation, | ) ) | Appeal from the Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Henry County |
| v. | ) | No. 20CH36 |
| PYROTEM PROPERTIES, LLC, THE FARMERS NATIONAL BANK OF PROPHETSTOWN, DEAN RESSER, UNKNOWN OWNERS and NON-RECORD CLAIMANTS, | ) ) ) ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Pyrotem Properties, LLC, and Dean Resser, | ) | Terrence M. Patton, |
| Defendants and Counterplaintiffs-Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The section 2-619 dismissal of the property owner's counterclaims and the summary-judgment order in the city's favor were improper as (1) the property owner was not time-barred from seeking damages from the city, which demolished the owner's property under the fast-track statute (65 ILCS 5/11-31 1(e) (West 2018)); and (2) the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2018)) does not immunize the city from the property owner's wrongful demolition claim.

¶ 2    In February 2020, pursuant to the "fast track" provisions of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-31-1(e) (West 2018)), the City of Geneseo (City) demolished the building at 602 North Center Street, Geneseo, Illinois (Property). After the City

petitioned to enforce the demolition lien on the Property, defendants Pyrotem Properties, LLC, and Dean Resser (defendants) contested the petition, asserting various defenses and counterclaims. Defendants argued, in part, the City failed to provide the notice required by section 11-31-1(e) and the City had not properly determined the property "was open and vacant" or "constituted an immediate and continuing hazard to the community."

¶ 3        In a motion to dismiss (735 ILCS 5/2-619.1 (West 2020)) and a motion for summary judgment, the City asserted, because it complied with the "fast track" provisions' notice requirements and defendants did not object within the 30-day deadline of section 11-31-1(e), defendants were time-barred from challenging the propriety of its findings regarding the condition of the building. The City further asserted defendants' counterclaims of trespass and conversion were barred by the Tort Immunity Act.

¶ 4        The circuit court agreed with the City's contentions and granted both the motion to dismiss and summary judgment in the City's favor. Defendants appeal, contending its claims were not barred. We agree with defendants and reverse and remand.

¶ 5                                    I. BACKGROUND

¶ 6        Defendant Pyrotem Properties, LLC (Pyrotem Properties), was the record owner of the Property. Defendant Dean Resser was the sole member and manager of Pyrotem Properties. The City demolished the Property in February 2020.

¶ 7        Before the Property was demolished, the City sent a "Notice to Remediate," dated October 17, 2019, by certified mail, return receipt requested, and first-class mail to defendants. The City also mailed notices under the same procedure to the former registered agent for Pyrotem Properties as well as to its lienholders. Pyrotem Properties was identified as the "Deed Owner."

¶ 8        The Notice to Remediate indicates it was sent pursuant to the fast-track provision of the Municipal Code. The notice states the Property was determined to be "open and vacant" and "constitute[d] an immediate and continuing hazard to the community." Attached is an inspection report, detailing the reasons the property was deemed a hazard. These reasons include, among others, violations of city ordinances regarding weed removal, the sealing of windows, and pest infestation. The notice further indicates the City intended to "demolish, repair, or enclose the building(s), and remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials on the Property, if that action is not taken by the Property owner or owners." If those improvements were not made "within 30 days of mailing this notice," according to the notice to remediate, "or within 30 days of the last day of publication of the notice, whichever is later, [the City] will have the power to demolish, repair, or enclose the building(s) or to remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials on the Property."

¶ 9        As stated above, with no objection filed in a circuit court, the Property was demolished. In April 2020, the City filed a demolition lien on the Property.

¶ 10        On May 15, 2020, the City petitioned the circuit court to foreclose its demolition lien on the Property. In support of its request for a foreclosure, the City asserted the "Property has been vacant and abandoned for an extended period of time" and the owners had "been unresponsive to all notices and mailings sent regarding the Property." The City asserted it continued to accrue costs in maintaining and safeguarding the Property. The City requested the following relief, in part: a judgment of foreclosure and sale, possession of the Property, attorneys' fees, costs, and expenses, and an order authorizing a sale by public auction.

¶ 11        In January 2021, defendants filed their answer, affirmative defenses, and

counterclaims. Two affirmative defenses were asserted: (1) at the time of demolition, "the improvements were not open and vacant and an immediate and continuing hazard to the community;" and (2) the City unlawfully demolished the property as it failed to comply with section 11-31-1(e)'s requirements.

¶ 12 Defendants asserted four counterclaims, seeking relief for the wrongful demolition of the Property. In count I, defendants asserted a civil action for deprivation of rights (see 42 U.S.C. § 1983 (2018)). According to count I, defendants, between October 1, 2019, and February 15, 2020, received no notice from the City regarding issues with the property or the improvements thereon. As a result of the failure to provide notice, defendants maintained they were denied their rights to procedural due process, resulting in financial damages. Relying in part on the same facts, defendants asserted a claim to quiet title (count II) and claims for conversion (count III) and trespass (count IV). In the claim to quiet title, defendants sought a declaration the demolition lien is null and void. For the conversion and trespass counts, defendants argued the City's conduct resulted in the unlawful demolition of the improvements and conversion of the personal property within it.

¶ 13 On December 21, 2021, the City moved to dismiss defendants' counterclaims and defenses and for summary judgment on its petition to foreclose the demolition lien. In support of its motions, the City averred, since at least 2005, the Property had been in violation of its codes, leading the City's building inspector to determine the building on the Property was open and vacant and an immediate and continuing hazard to the community. The City stated utilities had not been connected to the building since 2005 and the bathroom was not up to code since July 2012. The City further stated the building was overrun with weeds, broken windows, and pests and the front entrance to the building was overgrown with trees and weeds. The City cited

- 4 -

multiple notices to the Property's owner in 2013 and 2014 regarding violations of city ordinances for weeds.

¶ 14 According to the City, it provided the requisite notice of the fast-track statute. First, on October 16, 2019, the City posted the requisite notice at the front of the building on the Property. Second, the City not only ordered a title search but also completed a title-insurance commitment to ascertain the service list for the Notice to Remediate. Although Resser was not on the title commitment as an owner or lienholder, the City included Resser on the service list. One day after posting notice, the City sent the Notice to Remediate by certified mail, return receipt request, and by first-class mail to those on that list. On October 22, 23, and 24, 2019, notice was published in a local newspaper.

¶ 15 Despite the various means of providing notice, Pyrotem Properties did not file an objection or remedy the hazards on its property within the statutory 30-day period preceding the authorized demolition. Neither defendant claimed the certified-mail notice.

¶ 16 As a result of the statutory notice and defendants' failure to object or repair the building within 30 days, the City argued, defendants can no longer challenge the sufficiency of the "open and vacant" and continuing-hazard findings. The City argued it was empowered by statute to demolish the hazardous building, remove any debris, secure removal costs, and bring the foreclosure action. The City maintained the Notice to Remediate, which was posted, mailed, published, and recorded, is an affirmative matter that defeats all of defendants' counterclaims and its motion to dismiss under section 2-619 should be granted. See 735 ILCS 5/2-619(a)(9) (West 2018).

¶ 17 Regarding defendants' tort counterclaims, the City argued it is immune under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2018)). The City maintained

its building inspector, Rick Mills, was an employee who held a position in the determination of policy or involved the exercise of discretion and engaged in both a determination of policy and the exercise of discretion in performing the acts about which defendants complain.

¶ 18　　　　In response to the City's motions, defendants emphasized facts showing they did not receive notice before the demolition, the building was not "open and vacant" or a continuing hazard to the community, and the City's motive in the demolition was to sell the Property to a hospital. Defendants asserted Resser learned of the demolition of the Property from a coworker after the demolition occurred. Resser first learned of the building inspector's determinations when he was personally served with a copy of the City's petition to foreclose on the demolition lien. According to defendants, the City last inspected the interior of the Property in July 2012, seven years before the decision to pursue a fast-track demolition was made. After that July 2012 inspection, Mills issued a letter stating the inspections revealed no violations in the interior. Defendants stated the deposition testimony of Mills and the City Administrator JoAnn Hollenkamp established the city council, not Mills, made the decision to demolish the Property. Defendants attached a September 2019 email between the City and the Hammond-Henry Hospital CEO regarding options on how to acquire the Property, including through a fast-track demolition. Defendants further noted most of the information and photos in the Inspection Report attached to the Notice to Remediate were taken in 2012 and in the September 2019 email, the condition of the Property was not discussed.

¶ 19　　　　Defendants further argued no language in the fast-track statute creates a statute-of-limitations based on the filing of a Notice to Remediate and it should not be read to bar claims for wrongful demolition. Defendants further argued the facts show Mills did not make the decision to demolish the Property. That decision was made by the city council and was,

therefore, not barred by the Tort Immunity Act.

¶ 20         At the February 7, 2022, hearing on the motions, the circuit court dismissed the defenses and counterclaims and granted the City's motion for summary judgment. The court did so upon finding defendants' claims time-barred and foreclosed by the Tort Immunity Act:

"I do agree with [the City] that this comes down to notice. There is a reason the statute requires notice. And the reason is to— so the defendants, the owners of the property, or the people who have interest, know that if they disagree with the City's claim of the violations, and the unsafe conditions of the property, that they need to do something about it. That the City is ready to start taking action. And if you don't take action within that 30 days, then you have waived it, there is no other reason for the notice provision. So for me it comes down to notice.

The statutory requirements of notice, I believe, were met in this case. And I agree with [the City] that the City went beyond what they are required to do. I understand [defendants'] argument, that they, under the particular facts of this case, they should have done more. But this statutory notice scheme is in the statute and I don't find grounds to hold that unconstitutional, either in general or as applied to this case. If they had wanted—if this—if the legislature had wanted the City or the municipality to provide personal service to the owners and interest holders on the Fast-Track Statute, they could have put it in there. They didn't.

The law is that when you send something by certified mail, *** when you're required to provide notice by mail, either certified or first class, the act of mailing it, service is then complete. And the City went and they found every address they possibly could and they sent notice to all of them. So I find that they did, in fact, comply with the statutory notice requirements. That what they did did not violate the substantive or due[-]process, or procedural due[-]process rights of either Pyrotem Properties or Dean Resser.

Now, having [gotten] that notice in the mail, the posting outside the property and the publishing in the paper, the defendants had a period of time to do something and they didn't. So I do believe that the counterclaims and affirmative defenses, that wasn't an open—I forget the exact language and I hesitate to paraphrase, because I don't want to get it wrong. But that the—the affirmative defenses, that the property wasn't in violation of the codes, wasn't unsafe, those are all time[-]barred.

Again, as I said, allowing those to be filed later, after the petition to foreclose the lien has been filed, that renders the notice requirements of the fast-track demolition a nullity, no purpose to it. And I do find that on the trespass and—I'm sorry, let me get to it. Conversion, the trespass that the City does have tort immunity. So I'm going to grant their motion to dismiss. Having done that, that

unfortunately, for the defendants, wipes out pretty much all their—

well, not even pretty much, all the defenses to this action.

Regarding the petition to foreclose the lien, I don't find any genuine issue of material fact that can be raised at this point in time. And that being the case, that makes this an appropriate case for summary judgment. So I am going to grant summary judgment in favor of the City."

On February 17, 2022, the court entered a written order adopting its oral findings.

¶ 21 On March 11, 2022, the circuit court entered an order, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), no just reason exists for delaying the appeal of the February 2022 orders.

¶ 22 This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 On appeal, defendants argue the circuit court erred by granting the section 2-619 motion to dismiss and summary judgment for multiple reasons, including (1) the City failed to comply with the first step of the fast-track statute, finding the property to be open and vacant and an immediate and continuing hazard to the community, and therefore lacked authority to demolish the Property; (2) the Notice to Remediate is not an "affirmative matter" barring the defenses and counterclaims as the fast-track statute does not bar judicial review of the City's actions; and (3) the Tort Immunity Act does not bar their claims. We review section 2-619 dismissals and summary-judgment orders *de novo*. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368, 799 N.E.2d 273, 278 (2003) (discussing section 2-619 motions); *Jackson v. Graham*, 323 Ill. App. 3d 766, 774, 753 N.E.2d 525, 532 (2001) (discussing summary-judgment

orders).

¶ 25        Defendants' first argument challenges the City's conclusions the property was "open and vacant" and an immediate and continuous hazard. The circuit court, however, did not examine the merits of the City's conclusions regarding the Property's condition. Instead, the court's order found dismissal and summary-judgment proper because of defendants' failure to object within 30 days of the last posted notice and because the claims were barred by the Tort Immunity Act. We turn to defendants' arguments that address those findings.

¶ 26        A. The Fast-Track Provision of Section 11-31-1

¶ 27        The purpose of section 11-31-1 is to provide municipalities a quick and effective means to remove "unused and dilapidated structures that present danger and blight." *City of McHenry v. Suvada*, 396 Ill. App. 3d 971, 986-87, 920 N.E.2d 1173, 1187 (2009). Subsection (a) provides a process by which a municipality seeking to take action must apply for a court order before repairing or demolishing a building. 65 ILCS 5/11-31-1(a) (West 2018). In contrast, subsection (e), the fast-track provision, allows a municipality to take similar action without a court order when a building, three stories or less in height, is "open and vacant and an immediate and continuing hazard to the community." *Id.* § 11-31-1(e). Once a corporate official makes that determination, certain notice requirements must be met, including notice by certified mail, publication, and a sign posted on the property. *Id.*

¶ 28        Under section 11-31-1's fast-track provision, once notice is provided, any lienholder or owner of the subject property may take action either by demolishing, repairing, or enclosing the property, removing the unhealthy substances or materials, or by filing an objection in the circuit court. *Id.* ("Any person or persons with a current legal or equitable interest in the property objecting to the proposed actions of the corporate authorities may file his or her

objection in an appropriate form in a court of competent jurisdiction."). If an owner or lienholder has not taken such action within 30 days of the last publication notice or the mailing of the certified-mail notice, whichever is later, the municipality has the power to demolish the building:

"If the building is not demolished, repaired, or enclosed, or the garbage, debris, or other hazardous, noxious, or unhealthy substances or materials are not removed, within 30 days of mailing the notice to the owners of record, the beneficial owners of any Illinois land trust having title to the property, and all lienholders of record in the property, or within 30 days of the last day of publication of the notice, whichever is later, the corporate authorities shall have the power to demolish, repair, or enclose the building or to remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials." *Id.*

¶ 29 Defendants contend nothing in the statutory language of section 11-31-1(e) forecloses a challenge in a circuit court, particularly when there is evidence showing defendants did not learn of the demolition or the City's intent to demolish the property until after the building had been demolished. The City argues, however, there is no purpose for the 30-day notice period other than to give municipalities full authority to proceed when no objection is filed or appropriate action taken.

¶ 30 The question of whether section 11-31-1(e) bars defendants' counterclaims and defenses is a matter of statutory interpretation, a question of law that we review *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115, 896 N.E.2d 232, 235 (2008). Our main task in interpreting statutory language is to ascertain and effectuate legislative intent. *Monson v. City of*

- 11 -

*Danville*, 2018 IL 122486, ¶ 14, 115 N.E.3d 81. The statutory language, afforded its plain and ordinary meaning, is the most reliable indicator of that intent. *Id.* In this undertaking, we view words and phrases not in isolation but with consideration to other relevant provisions in the statute. *Id.* We are mindful "[i]t is improper for a court to read exceptions, limitations, or conditions into the statute that conflict with clearly expressed legislative intent." *McIlvaine v. City of St. Charles*, 2015 IL App (2d) 141183, ¶ 17, 40 N.E.3d 798.

¶ 31　　　　　We find no language in section 11-31-1(e) that bars unlawful-demolition actions after the 30-day period expires, even if the municipality complies with the notice procedure. Although the municipality is given the authority to demolish property, it is only given the authority to do so without first securing a court order when the property is found "open and vacant" and an immediate and continuing hazard to the community. There is no language giving the municipality unchecked power or immunity to demolish a building when a property owner fails to receive notice of that municipality's intent. Such an interpretation is inconsistent with another provision of the Municipal Code, section 1-4-7. 65 ILCS 5/1-4-7 (West 2018). Section 1-4-7 expressly provides municipalities are liable for injuries resulting from "actionable wrong[s]" even when the destruction "is pursuant to valid statutes":

> "The municipality shall be liable for any injury occasioned by actionable wrong to property by the removal, destruction or vacation, in whole or in part, of any unsafe or unsanitary building, by any municipal officer *** charged with authority to order or execute such removal, destruction or vacation, if such removal, destruction or vacation is pursuant to valid statutes, ordinances or regulations, and if such officer, board or employee as acted in good

- 12 -

faith, reasonable care and probable cause." *Id.*

¶ 32 To find defendants' counterclaims and defenses time-barred is to read a limitation into section 11-31-1(e) that is not there and that would conflict with other provisions of the Municipal Code. The circuit court thus erred in finding defendant's challenge to the City's demolition of its property barred by the failure to assert that challenge within 30 days of the last publication notice.

¶ 33                                B. Tort Immunity Act

¶ 34 Defendants next challenge the circuit court's order finding their claims for conversion and theft are barred by the Tort Immunity Act. Defendants argue the City incorrectly asserts the actions of Building Inspector Mills are protected under section 2-201 of the Tort Immunity Act, as, according to defendants, Mills denied making the decision to demolish the Property and the City's administrator testified the city council made the decision.

¶ 35 The "[Tort Immunity Act] protects local public entities and their employees from liability arising from governmental operations." *Monson*, 2018 IL 122486, ¶ 15. Its purpose "is to prevent the dissipation of public funds on damage awards in tort cases." *Id.* "Unless a specific immunity provision in the [Tort Immunity Act] applies, a public entity is liable in tort to the same extent as a private party." *Id.* Because the Tort Immunity Act "is in derogation of the common law, it must be construed strictly against the public entity seeking immunity." *Id.* In the absence of an applicable immunity provision, "municipalities are liable in tort to the same extent as private parties." *Van Meter*, 207 Ill. 2d at 368-69. Section 2-201 of the Tort Immunity Act, the basis for the City's motion to dismiss, provides the following: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining

- 13 -

policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2018).

¶ 36      We find the circuit court erroneously determined defendants' counterclaims of conversion and trespass were barred by the Tort Immunity Act. We do so not because of the rationale provided by defendants but because section 2-101 of the Tort Immunity Act expressly excludes actions against municipalities for damages caused by the removal or destruction of buildings by their employees. That section states, in part, "Nothing in this Act affects the liability, if any, of a local public entity or public employee, based on: *** Section 1-4-7 of the 'Illinois Municipal Code[.]' " 745 ILCS 10/2-101(e) (West 2018). As stated above, section 1-4-7 of the Municipal Code "imposes liability on municipalities for injuries to third persons occasioned by the removal or destruction of buildings by public employees[.]" *Ballinger v. City of Danville*, 2012 IL App (4th) 110637, ¶ 14, 966 N.E.2d 594. The Tort Immunity Act thus excludes municipalities from its protections in actions for wrongful demolition of property. See *id.* ¶¶ 14-17; see also *Harvest Church of Our Lord v. City of East St. Louis*, 407 Ill. App. 3d 649, 655, 943 N.E.2d 1230, 1235 (2011) ("[S]ection 2-101(e) of the Tort Immunity Act excludes the plaintiff's wrongful-demolition action from the provisions of the Tort Immunity Act.").

¶ 37      We recognize this argument was not raised in the circuit court and, therefore, could be deemed forfeited. See *Ballinger*, 2012 IL App (4th) 110637, ¶ 13. While defendants did not rely on section 1-4-7 of the Municipal Code in conjunction with section 2-101(e) of the Tort Immunity Act, defendants disputed the Tort Immunity Act barred their claims. Regardless, as the forfeiture rule does not affect jurisdiction, we may consider an otherwise forfeited issue " 'in furtherance of [our] responsibility to provide a just result and to maintain a sound and uniform body of precedent[.]' " *Id.* (quoting *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d

653, 664, 837 N.E.2d 922, 930 (2005)). To maintain a uniform body of precedent regarding the Tort Immunity Act's inapplicability to wrongful-demolition claims (see *id.* ¶¶ 14-17) and to provide a just result, we find the Tort Immunity Act does not bar defendants' conversion and trespass claims.

¶ 38                                    III. CONCLUSION

¶ 39            We reverse the circuit court's judgment and remand for further proceedings.

¶ 40            Reversed and remanded.