(No. 49808.—

*In re* RONALD BROWN, a Minor, Appellee.—(The People of the State of Illinois, Appellant.)

*Opinion filed March 23, 1978.*

152

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, of Chicago, and Lee T. Hettinger, Myra J. Brown, and James B. Davidson, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (John Thomas Moran and James B. Haddad, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

In a petition for adjudication of wardship filed by the People in the juvenile division of the Cook County circuit court Ronald Brown was charged with aggravated battery in that he "shot a shotgun" at Anthony Calloway, thereby injuring him. The trial judge adjudged Brown delinquent and committed him to the Illinois Department of Corrections. The appellate court reversed (49 Ill. App. 3d 580), finding that the People did not prove that Brown committed the offense prior to his 17th birthday as required by the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701—1 *et seq.*), and that he was not proved guilty beyond a reasonable doubt. We agree that the proof does not establish guilt beyond a reasonable doubt.

On February 27, 1975, a hearing was held on Brown's motion to suppress evidence due to the alleged illegality of his arrest. Several witnesses testified before Judge Costa, including Brown himself, who stated that he was 15 years old. After hearing the testimony of these witnesses and the arguments of counsel, Judge Costa denied the motion and immediately asked counsel to proceed with the case in chief.

The People called only two witnesses, the first of whom was Anthony Calloway, the victim of the aggravated battery. Calloway testified that in the early evening hours of December 10, 1974, he was sewing in Brainard Field House in Chicago, Illinois, when a door came open. As he stood up from the table, a shotgun was fired from the doorway, hitting him in the upper thigh and resulting in a wound so severe that a leg was amputated a few weeks later. Calloway testified that he did not see who shot him. Although he stated that four others were in the field house that day, all engaged in activities nearby, none of them testified at the adjudicatory hearing. Calloway also testified on cross-examination that, prior to the incident, he

had no contacts with the accused. He knew Brown only by face recognition and not by name.

The sole identifying witness, Leroy Williams, testified that he saw Brown carrying a sawed-off shotgun in a park near the field house at approximately 5:30 or 5:45 p.m. on the date of the shooting incident. According to Williams, Brown told him that he was going to "off a stud," meaning "kill a guy," and proceeded in the direction of the field house. Williams saw Brown walk to the front of the field house, where Brown met another person whom Williams did not identify. The other person opened the field house door and Brown fired a shot. Williams did not actually see the shotgun blast, but did see Brown fire it. Then Brown and the other person ran in different directions. Williams stated that he did not lose sight of Brown from the time he saw him with the shotgun until he ran from the scene of the crime. On cross-examination, Williams stated that he himself had been arrested for the shooting later that evening. That night Williams told police it was Ronald Brown who shot into the field house and that he knew this because he had seen Brown do it. Williams also admitted an earlier statement in which he said that it could have been either Brown or the unidentified person who fired the gun. On redirect examination, Williams stated that all charges against him relating to this incident had been dropped and that he was not testifying pursuant to any promise made by the office of the State's Attorney.

The defense presented three alibi witnesses, including Brown's girl friend, who testified that the accused had been playing cards and listening to records with them at the time of the shooting. Defense counsel also called two police officers who stated that during questioning Williams admitted being with the person who shot Anthony Calloway, although just what Williams meant by "being with" the person remained unclear.

The appellate court held that the trial judge could not find Brown delinquent under the Juvenile Court Act because there was insufficient proof to sustain a finding that Brown was under 17 at the time of the offense. We disagree as to the sufficiency of the proof. As noted earlier, on the trial date the court first heard a motion to suppress. In support of this motion Brown testified that he was 15 years old. Immediately following the court's denial of the motion, the same judge proceeded with the adjudicatory hearing.

Other than a *pro forma* blanket denial of the allegations of the delinquency petition contained in the answer thereto, it is not disputed that Ronald Brown was 15 years of age at the time of the hearing. The petition alleged his birth date was April 3, 1959, which would have made him 15 years old at the time of the February 1975 hearing. He, himself, testified in the same case, on the same day before the same judge, that he was 15 years old. The contention that because the proof of age occurred at a different stage of the proceedings, only minutes or at most an hour or two earlier, the judge who heard that testimony cannot consider it in deciding the case is, in our opinion, without merit. Clearly, a court may and should take judicial notice of other proceedings in the same case which is before it and the facts established therein. *People v. Davis* (1976), 65 Ill. 2d 157, 161; *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 249; *State Farm Mutual Automobile Insurance Co. v. Grebner* (1971), 132 Ill. App. 2d 234, 237; *Nogle v. Nogle* (1964), 53 Ill. App. 2d 457, 459.

We agree with the appellate court, however, that Brown was not proved guilty of aggravated battery beyond a reasonable doubt. The identification of F ɔwn as the assailant is based solely on the uncorroborated testimony of Leroy Williams, who himself had originally been charged with the crime. Having exonerated himself by

condemning Brown, Williams is in a position similar to that of an accomplice whose uncorroborated testimony must be viewed with caution. (*People v. Wilson* (1977), 66 Ill. 2d 346.) Although such testimony may be the basis for a conviction, we cannot say the burden of proof beyond a reasonable doubt was met here.

Williams' testimony at trial sometimes varied from his prior statements. Although several other people were nearby, none testified to corroborate his at-trial identification of Brown as the assailant. Nor did the prosecution introduce any physical evidence which would have supported Williams' testimony, such as Brown's clothing, which had been described by Williams at trial, or the sawed-off shotgun. Williams' claim that Brown, who had theretofore said nothing beyond "hello" to Williams, told him while passing in the park that he was going to kill someone seems improbable. We also note that the alibi witnesses presented by the defense were consistent in their testimony.

After reviewing the entire record, we agree that Brown's guilt was not proved beyond a reasonable doubt and that the adjudication of delinquency cannot stand.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*