663 N.E.2d 498 (1996)
278 Ill. App.3d 885
215 Ill.Dec. 487
In re C.M.J., M.M.J., and S.E.J., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Edwin Aadil J., Respondent-Appellant).
No. 5-95-0187.
Appellate Court of Illinois, Fifth District.
March 29, 1996.
*499 Charles Cavaness, Womick & Associates, Chartered, Carbondale, for Appellant.
H. Wesley Wilkins, State's Attorney, Jonesboro, Norbert J. Goetten, Director; Stephen E. Norris, Deputy Director; Craig J. Jensen, Contractual Attorney; Office of the State's Attorneys Appellate Prosecutor, Mt. Vernon, for Appellee.
Presiding Justice HOPKINS delivered the opinion of the court:
Respondent, Edwin Aadil J., appeals from the trial court's order terminating his parental rights to his three minor children, C.M.J., M.M.J., and S.E.J., wherein the trial court found, pursuant to section 1(D)(j-1) of the Adoption Act (750 ILCS 50/1(D)(j-1) (West 1994)), that respondent was unfit on the grounds that he murdered the children's mother, Jeanie B.-J. On appeal, respondent argues that the State failed to prove a prima facie case, and that even if the State proved their prima facie case, the trial court erred in allowing the children to be placed for adoption before respondent has exhausted his appeal rights in the State court system. Both arguments appear to present questions of first impression. For reasons we will more fully explain, we affirm.

I. FACTS
On April 8, 1994, the Union County State's Attorney filed a petition for adjudication of wardship involving M.M.J., C.M.J., and S.E.J., respondent's three minor children. In the petition, the State alleged that the children were dependent, in that their mother died on April 3, 1994, "as a result of a severe beating and physical complications resulting from the same," and that respondent was incarcerated in the Jackson County Jail on charges of first degree murder and other felony charges "in connection with the death of Jeanie" B.-J., the children's mother.
*500 On May 3, 1994, the trial court, Honorable Rodney A. Clutts presiding, conducted a hearing on the petition for adjudication of wardship. During that hearing, the State introduced the coroner's certificate of death of Jeanie B.-J., certified copies of the murder and other charges pending against respondent in Jackson County, Illinois, showing that respondent was charged in connection with the murder of the children's mother, and a certified copy of the docket sheet in the Jackson County criminal case against respondent. The court admitted the documents to show that the children were dependent due to their father's incarceration and their mother's death, and accordingly, the court made the children wards of the court.
On January 9, 1995, the State filed a petition alleging that respondent "is an unfit person as described in the Adoption Act, 750 ILCS 50/1D in that he has a conviction of first degree murder * * * for the murder of Jeanie Ann [B.-J.], the mother of said minors." The petition requested the court to terminate all of respondent's parental rights to the children and to appoint a guardian for the children so that they could be placed for adoption.
On January 27, 1995, a hearing was held, Judge Clutts presiding, on the State's petition to terminate respondent's parental rights. At that hearing, the court admitted, without objection, a certified copy of a judgment and sentence, entered on November 15, 1994, in the Jackson County circuit court in the case of People v. Edwin A. J., showing that respondent was sentenced to natural life in prison without parole for his conviction of first-degree murder. When introducing this exhibit, the State explained that it was introducing the certified copy of the conviction and sentence pursuant to subsection j-1 of the unfitness statute (750 ILCS 50/1(D)(j-1) (West 1994)), which provides for a finding of unfitness when a parent is convicted of the first- or second-degree murder (720 ILCS 5/9-1, 9-2 (West 1994)) of the other parent of the child. The prosecuting attorney stated:
"MR. WILKINS [State's Attorney]: * * * We are offering [the certified copy of the judgment and sentence] to show that he has been convicted of first degree murder of the biological mother of these children. And for that reason, he should be found, as a matter of law, to be an unfit parent unless he can overcome that by clear and convincing evidence. I believe it shifts the burden of proof to him to prove that he is not an unfit parent by a very high standard."
Respondent's attorney did not object to the introduction of the certified copy of the judgment and sentence, and he responded to the State's argument regarding the burden of proof as follows:
"MR. CAVENESS [respondent's attorney]: Your honor, basically, I agree with what the State has said, in that I believe the burden is now upon us to overcome the presumption."
Respondent's attorney asked for a brief recess to confer with his client, which was granted. After the recess, respondent's attorney stated that respondent would not call any witnesses in his behalf, but he asked the court to reserve ruling on the petition to terminate respondent's parental rights "until such time as Mr. [J.'s] appeal processes have been exhausted."
The State objected to a reserved ruling, pointing out that the statute (750 ILCS 50/1(D)(j-1) (West 1994)) did not require the court to reserve ruling, that the court should apply the statute as written, and that the best interests of the children required the court to terminate respondent's parental rights immediately. The court allowed the parties to submit written authority on the issue in support of their respective positions, and on March 3, 1995, the court entered an order terminating respondent's parental rights. The court stated in the order that it found "that the minor's father has been convicted of the First Degree Murder of the minor's natural mother, in violation of Section 9-1 of the Illinois Criminal Code," (720 ILCS 5/9-1 (West 1994)) and that "pursuant to said conviction, * * * Edwin [J.] is an unfit person, as defined under Section 50/1(D)(j-1) of the Illinois Adoption Act, such that his parental rights are hereby terminated." On March 10, 1995, the court entered a final order granting guardianship to the Department of Children and Family Services *501 with the authority to consent to adoption. Respondent appeals from the March 3, 1995, order terminating his parental rights.

II. ANALYSIS
Respondent first argues that the State failed to prove a prima facie case of depravity as defined in In re Abdullah, 85 Ill.2d 300, 53 Ill.Dec. 246, 423 N.E.2d 915 (1981). However, respondent was not found unfit under the depravity section of the unfitness statute (750 ILCS 50/1(D)(i) (West 1994)) but, rather, under the 1994 amendment to the unfitness statute, subsection j-1. The relevant sections of the statute are as follows:
"D. `Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following:
* * * * * *
(i) Depravity.
* * * * * *
(j-1) Conviction of first degree murder in violation of paragraph 1 or 2 of subsection (a) of Section 9-1 of the Criminal Code of 1961 or conviction of second degree murder in violation of subsection (a) of Section 9-2 of the Criminal Code of 1961 of a parent of the child to be adopted shall create a presumption of unfitness that may be overcome only by clear and convincing evidence." 750 ILCS 50/1 (West 1994).
Subsection j-1 became effective January 1, 1994. An amendment to a statute creates a presumption that the amendment was enacted in order to change the former rule. People v. Davis, 95 Ill.App.3d 1097, 51 Ill.Dec. 477, 420 N.E.2d 1035 (1981).
The main case upon which respondent relies, Abdullah, has no relevance to this case, because in that case the supreme court considered whether a parent's parental rights were properly terminated under the depravity section of the statute. Abdullah, 85 Ill.2d 300, 53 Ill.Dec. 246, 423 N.E.2d 915. In Abdullah, a father who was convicted of murdering his child's mother was found to be an unfit parent on the grounds of depravity, which is defined as "`an inherent deficiency of moral sense and rectitude.'" Abdullah, 85 Ill.2d at 305, 53 Ill.Dec. 246, 423 N.E.2d 915, quoting from Stalder v. Stone, 412 Ill. 488, 498, 107 N.E.2d 696 (1952). Although the facts in Abdullah are very similar to the case sub judice, it was decided before the enactment of subsection j-1, and it does not control our decision, at least to the extent that the holding therein conflicts with subsection j-1.
The same analysis and conclusion apply to a similar case upon which respondent relies, In re Marriage of T.H., 255 Ill.App.3d 247, 193 Ill.Dec. 370, 626 N.E.2d 403 (1993). Like the supreme court in Abdullah, this court in T.H. considered the termination of parental rights on the grounds of depravity where a father was convicted of murdering the mother of his children, and it was decided prior to the effective date of subsection j-1. Thus, T.H. does not control our decision herein.
Respondent argues that the State failed to prove a prima facie case against him, since it presented only a certified copy of the judgment and conviction, showing that he was convicted of first-degree murder. Respondent contends that the State did not show that the murder victim was the mother of respondent's children or that the murder was accompanied by exceptionally brutal or heinous behavior. These factors, that the murder victim was a parent of the child and that the murder was accompanied by exceptionally brutal or heinous behavior, were set forth with approval as providing sufficient grounds upon which to prove depravity in Abdullah. Abdullah, 85 Ill.2d at 306-07, 53 Ill.Dec. 246, 423 N.E.2d 915.
Defendant's reliance on Abdullah is misplaced. First, the amendment, subsection j-1, under which respondent was found unfit does not have the same requirements as those listed in Abdullah. Subsection j-1 requires only that respondent has been convicted of the first- or second-degree murder of his children's other parent. Upon showing that respondent was convicted of the first-degree murder of the mother of his children, the burden shifted to respondent to show by *502 clear and convincing evidence that he was not unfit. 750 ILCS 50/1(D)(j-1) (West 1994).
Respondent additionally asserts that the State proved only that he was convicted of murder, but not that he was convicted of murdering his children's mother, since the certified copy of the judgment and sentence did not state the name of the victim he was convicted of killing. However, it is clear from the record that the trial court had ample evidence before it from which to find that respondent was convicted of killing the mother of his children and not someone else.
The trial court was authorized to take judicial notice of facts established in other proceedings in the same case before it. In re Brown, 71 Ill.2d 151, 15 Ill.Dec. 774, 374 N.E.2d 209 (1978). In the case at bar, Judge Clutts presided over all of the pretrial proceedings as of May 3, 1994. During that time period, numerous documents were admitted and numerous witnesses testified that respondent was charged with and held in jail for the murder of Jeanie B.-J., his wife and the mother of the three children involved herein. Moreover, although the State did not specifically ask the court to take judicial notice of the fact that respondent was convicted of the murder of his children's mother, the court was correct in doing so sua sponte. People v. Speight, 72 Ill.App.3d 203, 27 Ill.Dec. 934, 389 N.E.2d 1342 (1979). Finally, the State explained that the purpose of introducing the certified copy of the judgment and conviction was to show that respondent had been convicted of murdering his children's mother.
Clearly, the State introduced sufficient evidence to satisfy its burden to prove that respondent was convicted of the first-degree murder of the mother of his children, and the court found that respondent was convicted of murdering his children's mother based upon competent evidence of record, which is all the statute requires. Respondent's attorney recognized this at the unfitness hearing when he informed the court that he agreed with the State that the burden had shifted back to his client to prove that he was not unfit. Respondent did not put on any evidence to rebut the State's prima facie case. Therefore, the court was correct in finding that respondent was an unfit parent as defined in subsection j-1. 750 ILCS 50/1(D)(j-1) (West 1994).
Respondent next argues that even if the State presented a prima facie case, the court erred in allowing respondent's children to be placed for adoption before respondent has exhausted all of his State court appeals. Respondent argues that the court should engage in a balancing of the rights of the parent against the children's need for stability. Respondent argues that the best way to balance these competing interests is to reserve ruling on the issue of termination of parental rights until respondent has exhausted all of his State court appeals. In this way, according to respondent, the courts can uphold the rights of a parent to the society of his children and will "avoid prematurely destroying the family unit." We disagree for at least two reasons.
First, the Adoption Act does not call for the court to reserve ruling until the appeal process is finalized. Indeed, if the court were to have reserved ruling in the manner suggested by respondent, it would have done so in contravention of the Adoption Act. Where a parent does not consent to the adoption of his or her child, that parent must be found unfit by clear and convincing evidence before the adoption can take place. In re Adoption of Syck, 138 Ill.2d 255, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990); 750 ILCS 50/8(a)(1) (West 1994). Where one of the child's parents is deceased and the other parent is found to be unfit, the child is "available for adoption." 750 ILCS 50/1(F) (West 1994).
We find that subsection j-1 is clear and unambiguous. Therefore, we find that the trial court was compelled to apply it exactly as it is written. Kraft, Inc. v. Edgar, 138 Ill.2d 178, 149 Ill.Dec. 286, 561 N.E.2d 656 (1990). The trial court in the case at bar properly applied the statute as written without adding limitations or restrictions that the legislature did not include. People v. Cochran, 167 Ill.App.3d 830, 118 Ill.Dec. 806, 522 N.E.2d 261 (1988). Subsection j-1 required the court to find respondent unfit, as the *503 State proved that respondent was convicted of murdering his children's mother, and respondent did not overcome the presumption of unfitness with clear and convincing evidence to show that he is a fit parent. 750 ILCS 50/1(D)(j-1) (West 1994). If the legislature intended trial courts to reserve ruling on questions of termination until a parent has exhausted all State court appeals, as respondent argues, the statute would say so. However, it does not. Additionally, the legislative history of the amendment does not indicate any underlying intent to allow parents to proceed through the appeal process before the trial court can terminate a parent's parental rights under subsection j-1. Therefore, we find that the trial court correctly applied the clear words of the statute when it terminated respondent's parental rights regardless of the status of any appeal right respondent might choose to exercise.
Second, we find another equally compelling reason to affirm the trial court and reject respondent's argument on this issue. The paramount consideration in this case, as in Abdullah, is what will happen to the children. Abdullah, 85 Ill.2d at 310, 53 Ill.Dec. 246, 423 N.E.2d 915. "The best interests and welfare of the person to be adopted shall be of paramount consideration in the construction and interpretation of this Act." 750 ILCS 50/20a (West 1994). We take this mandate from our legislature very seriously. In making decisions affecting the lives of young children, we must use extreme caution to protect their best interests in every way possible.
To that end, our supreme court in Abdullah and our legislature in the Adoption Act have given us a clear path. Regardless of how painful it may be to a parent, regardless of whether the parent is likely to prevail on appeal, if he is convicted of murdering the children's other parent, then he is unfit and his parental rights are to be terminated immediately, unless he can overcome the presumption of unfitness by clear and convincing evidence. 750 ILCS 50/1(D)(j-1) (West 1994). We do not balance the interests of the parent in retaining his rights to his children against the best interests of the children in this situation. The best interests of the children is our paramount and overriding consideration. If a parent's rights do not interfere with the best interests of the children, then we are to protect those rights with equal vigor. Nevertheless, since the respondent herein did not overcome the presumption of unfitness by clear and convincing evidence, the trial court properly terminated his parental rights without delay. See also T.H., 255 Ill.App.3d at 257-58, 193 Ill.Dec. 370, 626 N.E.2d 403.
Affirmed.
WELCH and GOLDENHERSH, JJ., concur.