2023 IL App (1st) 220236-U

Nos. 1-22-0236 & 1-22-0293

Order filed April 21, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 M1 401501 |
| JEWELLERY TOWER, LLC, MRR 55 WASHINGTON OWNER, LLC, | ) ) ) | |
| | ) ) | Honorable Patrice Ball Reed, |
| Defendants, | ) ) | Judge Presiding. |
| (MRR 55 Washington Owner LLC, Defendant-Appellee; Jewellery Tower, LLC, Defendant-Appellant). | ) ) ) | |

---

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

¶ 1    *Held:*    The circuit court did not err in its December 14, 2021, order that required defendant-appellant to sign a façade contract by December 21, 2021. The circuit court did not abuse its discretion when it found defendant-appellant in indirect civil contempt for failing to comply with the court's order; affirmed.

**ORDER**

¶ 2       Defendant-Appellant, Jewellery Tower, LLC, appeals from the circuit court's

interlocutory orders that found it in indirect civil contempt for failing to follow an order that

required it to sign a façade contract with respect to a building owned by Jewellery Tower and Defendant-Appellee MRR 55 Washington Owner LLC (MRR). Jewellery Tower also appeals the circuit court's underlying order that required it to sign a façade contract. On appeal, Jewellery Tower contends that the court erred when it ordered Jewellery Tower to execute a façade contract because the court did not have any authority to order the parties to sign the contract and the order violated Jewellery Tower's freedom to contract. Jewellery Tower also contends that the circuit court abused its discretion when it found Jewellery Tower in indirect civil contempt for failing to sign the contract.

¶ 3                                      I. BACKGROUND

¶ 4        This action involves a 38-story high rise building located at 55 East Washington Street in Chicago (Building) owned by both MRR and Jewellery Tower. MRR owns floors 13-21 of the Building, which consists of residential property and certain common areas, and Jewellery Tower owns floors 1-12 and 22-38, which consists of retail/office property. The declaration of covenants, conditions, restrictions and easements for the Building provides that MRR, as the owner of residential property, is responsible for paying about 35% of the expenses that Jewellery Tower must pay for services for the Building, including for costs related to the façade of the Building.

¶ 5           Complaint and Brief Summary of Litigation Until January 2020

¶ 6        In 2017, the City of Chicago (City) filed a complaint against the owners of the Building for building code violations, alleging that the Building failed to comply with the City of Chicago Municipal Code (Code). In May 2018, the City filed a first amended complaint, alleging that the Building failed to comply with the Code in a number of ways relating to both the interior and exterior parts of the Building. As for the exterior part, the City alleged that defendants failed

2

to "maintain the exterior walls***free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls"; "[r]eplace broken, missing or defective window panes"; and "maintain building or structure in a structurally safe and stable condition." The City sought civil penalties and injunctive relief, including a temporary or permanent injunction requiring the defendant-owners to correct the violations.

¶ 7        We note that in 2017, the owner of Jewellery Tower, Xiao Hua Gong, was indicted in Canada on charges related to money laundering and in December 2017, the Ontario Superior Court of Justice, Ontario, Canada court entered restraining orders that restrained Gong's real estate properties in the United States, including the Building. In October 2018, pursuant to a treaty, the United States District Court for the District of Columbia entered an order that enforced the restraining orders entered in Canada.

¶ 8        For a better understanding of the condition of the Building and history of the case leading up to the circuit court's December 14, 2021, order, we will briefly summarize various documents contained in the record on appeal. The record contains a January 2019, critical examination report for the Building prepared by Eskenazi & Farrell Associates, LLC, which stated that the exterior walls had continued to deteriorate from the time the previous reports were conducted in 2015 and 2017. It recommended that a "substantial" restoration project be performed over the next four years and it "strongly recommend[ed] that the heavy duty overhead protection canopy currently in place at the entire west and north elevations remain in place until a substantial repair program has been completed."

¶ 9        In April 2019, the City filed an emergency motion to vacate or appoint a receiver, in which it stated that the Building posed a health and safety problem to the residents and should be immediately vacated and secured. The City stated that on April 2, 2019, an inspection from

3

Department of Buildings "found multiple building code violations, a number of which are considered dangerous and hazardous." The City also noted that the exterior wall issues were still pending and that, "[a]lthough problematic, the exterior walls issues are not immediately dangerous and hazardous." The City requested the court order the tenants to vacate the Building and the defendants to remove the unhealthy and unsafe conditions. The City requested, in the alternative, the court appoint a general receiver.

¶ 10       The record includes various orders entered by the circuit court between October 2019 and December 2019, including orders that required Jewellery Tower to create and fund a construction escrow account, pay utility and scaffolding bills, and repair broken windows at the Building. On December 12, 2019, the City filed an emergency petition for appointment of a limited receiver to "[p]repare a feasibility study regarding the care, management, and repair" of the Building, fully fund the construction escrow account, pay utility and scaffolding bills, and cooperate with MRR to fix the Building.

¶ 11                          January 2020 – Receiver Appointed

¶ 12       On January 23, 2020, the court appointed Jones Receiverships, LLC, as a general receiver for Jewellery Tower's portion of the Building and ordered Jewellery Tower to immediately pay the outstanding bills to the structural engineers and the scaffolding company. In the receiver's January 22, 2020, "comprehensive plan to stabilize the property," it asserted that the City's inspector had "raised the facade as a potentially imminent threat that will progressively get worse if not addressed," that "[c]urrently the facade has been abated and addressed by MRR," and that "[t]his is a fix that should survive this winter's freeze thaws, however it may not survive a second winter."

4

¶ 13      On March 5, 2020, the court entered a supplemental order on its order appointing a receiver, in which it concluded as follows:

"There exists dangerous and hazardous conditions at the Property that jeopardize the health and safety of the public citizens of the City of Chicago due to cracked and broken windows throughout the upper floors of the building, that could fall, strike and impale pedestrians; and leaking water pipes due to improper heating and lack of insulation."

The Court also stated that the Building "fails to meet the minimum standards of health and safety required by the Municipal Code."

¶ 14       In May 2020, the City's inspector prepared another inspection report on the Building, which stated that there were "multiple areas that have fractures on the face of the terracotta masonry" and "[d]ue to the freeze and thaw conditions of the Chicago environment, water and ice penetration to this terracotta present a dangerous and hazardous condition." The report also stated that there were "multiple window glass panes broken throughout the building," which "pose[d] a significant dangerous condition to the public at large."

¶ 15      On September 23, 2020, MRR filed a motion to discharge the receiver based on an undisclosed conflict of interest, which as discussed below, the circuit court subsequently denied.

¶ 16      On September 24, 2020, the court ordered the receiver to, among other things, secure a follow-up report from Eskenazi and Farrell, and on October 7, 2020, Eskenazi and Farrell issued a follow-report entitled "2019 Exterior Wall Repairs-2020 Follow up Report." The report stated that the stabilization work in 2019 "appears to have been installed properly and at the locations of the walls with the highest questionability, but does not negate the need for significant terra cotta façade repairs throughout the façade." The report stated that there were

several terra cotta units with multiple cracks, and it recommended the heavy duty canopy protection remain in place until a major façade renovation program has been performed.

¶ 17    The record contains an October 19, 2020, email from the City to Jewellery Tower, MRR, and the receiver, which stated that based on an October 14, 2020, inspection and the requirements of the Code, the owners and general receiver of the Building "must take immediate action to address and abate the dangerous conditions on the exterior façade of the property." The email required the parties to, among other things, complete "[a] full 100% hands on critical exam façade inspection" of the entire property.

¶ 18    On October 29, 2020, the court issued an order that stated it approved the receiver's "proposed contract" with Klein & Hoffman. The record contains a November 4, 2020, letter from Klein & Hoffman to the receiver with the subject "Proposal for Architectural Engineering Services Façade Assessment and Recommendations for Repair," which states that Klein & Hoffman was familiar with the Building, as it had previously completed three other reports, and it had a "thorough understanding of the issues which are critical to the proper assessment and repair of the building's terra cotta facades." It states that, "[l]eft unrepaired, the probability that terra cotta will dislodge, fall to the street level, and endanger the public will increase in frequency."

¶ 19    On November 19, 2020, the circuit court denied MRR's motion to discharge the receiver based on an undisclosed conflict of interest, which MRR had filed in September 2020. MRR appealed the circuit court's ruling under Illinois Supreme Court Rule 304(b) (eff. Mar. 8, 2016). On July 16, 2021, this court reversed the circuit court's ruling. *City of Chicago v. Jewellery Tower*, 2021 IL App (1st) 201352, ¶¶ 59-60. Thereafter, on August 4, 2021, the circuit court entered an order discharging the receiver effective August 20, 2021.

¶ 20 We note that, according to Jewellery Tower, by May 2021, the criminal case in Canada involving Jewellery's Tower's owner was resolved.[1] According to the City and Jewellery Tower's briefs, on May 10, 2021, the circuit court entered an order that found that Jewellery Tower could resume management of the Building. The May 10, 2021, order is not contained in the record, but the parties do not dispute the contents of this order.

¶ 21 Klein & Hoffman's Critical Examination Report

¶ 22 On August 13, 2021, Klein & Hoffman issued a critical examination report for the Building. The report stated that the "facades are generally in poor condition," "the severity and extent of distress is significant," and "the apparent lack of maintenance over the past several decades has resulted in significant water infiltration and continued worsening of distress over that time." The report also stated that,

"No conditions observed were characterized as 'unsafe and imminently hazardous.' However, many locations with significant distress were observed and were designated for stabilization repairs to prevent them from becoming 'unsafe and imminently hazardous' prior to the next up-close inspection. Stabilization repairs were installed promptly after completion of each inspection drop."

The report recommended that a "significant repair program be implemented" within two years and that the "[e]xisting protective sidewalk canopies should remain in place and be regularly maintained as necessary until long-term facade repairs are performed."

---

[1] According to Jewellery Tower's April 25, 2021, written objections to the receiver's motion to sell contained in the record, the case in Canada was terminated, and Gong was absolved of the allegations.

¶ 23    On October 26, 2021, the court issued an order that required the City, MRR, and Jewellery Tower to schedule a meeting on November 18, 2021, "to outline the plan for fixing the façade."

¶ 24                            Hearing and Order on December 14, 2021

¶ 25    At a hearing on December 14, 2021, the City's counsel informed the court that the parties held a meeting and had requested Klein & Hoffman to prepare a proposal that "covers the full scope of work over a period of years to bring the building into compliance." The City's counsel explained that on November 29, 2021, Klein & Hoffman presented a contract to the parties and that MRR and Jewellery Tower were going to sign it. Jewellery Tower's counsel then responded:

> "You know, I can submit some clarity there. You know, again, we're not opposed to Klein Hoffman that they do have, you know, immense experience with the building and they're familiar with that. I think it's maybe their third or second examination. I only ask that that [*sic*] phone call will be provided with the proposal before committing to the project."

Jewellery Tower's counsel explained that there were "just a couple of timeline issues I think we wanted to discuss, specifically the windows, which I know everyone is concerned about and frankly which we already paid for." Counsel then stated, "Not withstanding [*sic*], you know, we're ready to move forward with this project provided some of the minor details are ironed out." Jewellery Tower's counsel further explained that "the only thing that was keeping me from committing was that we didn't have a proposal yet that laid out the figures and timeline" and now that "we do [have a proposal] I just think it makes sense to have a phone call immediately as opposed to responding to email and I'm sure shortly after that phone call we can get the singed

8

[*sic*] agreement and deposit." Jewellery Tower's counsel stated it could have the conversation with Klein & Hoffman and sign the contract in one week and then asked for December 20, 2021, for Jewellery Tower to sign the contract. After the discussion regarding the date of the continuance, Jewellery Tower's counsel stated, "[w]e do understand the need to get the ball rolling and we do appreciate that."

¶ 26    Thereafter, the court orally ordered the parties to sign a contract by December 21, 2021, with Jewellery Tower providing $3 million as a deposit and MRR providing $1.5 million as a deposit by January 5, 2022. Following the hearing, the court issued a written order, which stated:

> "There is a proposal to repair the exterior facade that was presented to [Jewellery
>
> Tower] and MRR by Klein and Hoffman. A final contract shall be executed by both
>
> owners on or before December 21, 2021. In order to ensure that the prep work begins
>
> promptly, the court orders that a deposit of $4.5 million be funded by January 5, 2022.
>
> The court hereby orders that [Jewellery Tower] deposit $3 million and MRR deposit $1.5
>
> with Klein and Hoffman, or an alternate escrow agent, by that deadline."

The court also ordered Jewellery Tower and MRR to inspect every window in the Building every two weeks to ensure none were broken or dangerous.

¶ 27                    Jewellery Tower's Motion for Extension of Time

¶ 28    On December 20, 2021, Jewellery Tower filed a motion to extend the deadline to execute the agreement, arguing that when the court issued its December 14, 2021, order only one proposal for façade repairs had been submitted for review. Jewellery Tower stated that it must be given "an opportunity to explore proposals that offer alternative timelines for the ultimate completion of the façade repairs." It claimed that the additional time to "contemplate and

evaluate the proposal will cause little to no delays," as construction was not "slated to commence until the Spring of 2023" and Klein & Hoffman's critical examination report indicated that the facade was "currently in stable condition." Jewellery Tower further stated that it "must be afforded more than six (6) days to evaluate and execute an agreement that will ultimately span more than four years and cost upwards of fifteen million dollars ($15,000,000), which fact alone should suffice to warrant an extension to the deadline imposed in the Order." Jewellery Tower asserted that on December 20, 2021, MRR circulated a rider to the proposal with additional terms, which was "further evidence that the parties require additional time to properly vet K&H, review the terms of the agreement and, ultimately, execute a contract that is in the best interest of the Pittsfield Building and surrounding premises." In its prayer for relief, Jewellery Tower requested a three-week extension.

¶ 29      On January 3, 2022, the court issued an order denying Jewellery Tower's motion to extend the deadline to execute the facade repair agreement.[2] The court stated:

> "[Jewellery Tower's] Motion to Extend the Deadline to Execute the Façade Repair
> Agreement is denied. The Court finds that this motion is a further delay to the project and
> that [Jewellery Tower] had adequate time for due diligence and to entertain alternate
> proposals. The Court has seen [Jewellery Tower] and its principal Edward Gong
> repeatedly take actions to delay bringing the property into compliance over the past 5
> years that the case has been pending. The Court modifies its December 14, 2021 order to
> provide that the contract must be executed by Friday, January 7, 2022 by both [Jewellery

---

[2] The circuit court's January 3, 2022, order is not contained in the record on appeal but is included in the appendix to MRR's brief. Although the order is not included in the record, we may take judicial notice of the circuit court's order. See *Koshinski v. Trame*, 2017 IL App (5th) 150398, ¶¶ 9-10; *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 35 (stating that it may take judicial notice of public records); *In re Brown*, 71 Ill. 2d 151, 155 (1978) ("Clearly, a court may and should take judicial notice of other proceedings in the same case which is before it and the facts established therein." ).

Tower] and MRR. The court's requirement to deposit $4.5 million is modified to reflect a new deadline of January 12, 2022 with all other terms of the order remaining in full force and effect.

¶ 30        Orders Following the Circuit Court's Denial of Jewellery Tower's Motion for

Extension of Time

¶ 31        At a hearing on January 11, 2022, the court noted that Jewellery Tower had not signed the contract[3] and, on the same day, the court issued a written order that, among other things, stated that, "[a]ll orders remain in full force and effect, including the order requiring the facade repair contract to be executed and $4.5 million to be put in escrow." On January 13, 2022, the court issued another written order that stated that, "[a]ll orders remain in full force and effect, including the order requiring the facade repair contract to be executed and $4.5 million to be put in escrow."

¶ 32        At a hearing on January 19, 2022, Jewellery Tower's counsel informed the court that Jewellery Tower had signed a rider to the contract that stated it "did not agree to the terms that Klein & Hoffman had put forward and it was signed under protest." The court responded that Jewellery Tower had been ordered three different times to sign the contract and it was going to hold Jewellery Tower in contempt. Following the hearing, on January 20, 2022, the court issued a written order, which stated that it found Jewellery Tower in indirect civil contempt for its "failure to sign the facade contract with Klein and Hoffman and to pay the initial down payment of $3 million as ordered repeatedly by this court." It stated that Jewellery Tower "was ordered to

---

[3] The January 11, 2022, transcript is not contained in the record on appeal, but it is included in the appendix to MRR's brief. Jewellery Tower does not object to the inclusion of the January 11, 2022, transcript in MRR's brief, or this court's consideration of it. As appellant, it is Jewellery Tower's burden to provide a complete record on appeal. See *Advocate Health & Hospitals Corp. v. Heber*, 355 Ill. App. 3d 1076, 1080 (2005) ("It is the appellant's burden to preserve the trial evidence and to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal.").

execute the contract and pay the money in the court order of December 14, 2021" and that it had rejected Jewellery Tower's motion to extend the deadline and required the contract to be signed by January 7, 2022, with money deposited by January 12, 2022, neither of which had been done. The order stated that Jewellery Tower "willfully failed to comply with the court's order" and assessed a daily fine of $500 per day until it complied with the court's order.

¶ 33    At a hearing on January 25, 2022, the court orally stated that the contract with Klein & Hoffman "needs to get signed" and the court explained its finding regarding Jewellery Tower's conduct in the case: "It's evident that he delays because he feels like he should be or he can. And enough is enough." On January 27, 2022, the court issued a written order that stated that Jewellery Tower "continued to willfully fail to comply with the court's order regarding the facade contract" and increased the daily fine to $1,000 per day until it complied with the court's order.

¶ 34    We note that the record contains a February 4, 2022, letter addressed to the circuit court judge from Klein & Hoffman that stated it was providing additional clarity on the condition of the terra cotta facades of the Building. It stated that "much of the terra cotta is cracked in a manner that has compromised its lateral attachment to sound construction behind," which "makes the terra cotta more susceptible to outward movement and possible dislodgement from the façade." It stated that, "[t]his condition creates a fall hazard and is a public safety concern" and concluded that, [c]onsidering the condition of the facades, the recommended timeframe for repair, and the long lead-time for new terra cotta, K&H feels it is imperative that the preparation of construction documents and bidding/contract negotiation be initiated as soon as possible, immediately followed by the initial steps to procure the new terra cotta." Klein & Hoffman also concluded that "further delay creates an unacceptable public safety concern."

¶ 35    Under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), Jewellery Tower filed an interlocutory appeal of the circuit court's January 20, 2022, order that found Jewellery Tower in indirect civil contempt for failing to sign a façade contract as ordered in the December 14, 2021, order as well as the December 14, 2021, order that ordered it to sign a façade contract (case No. 1-22-0236). Under Rule 304(b)(5), Jewellery Tower also filed an interlocutory appeal of the circuit court's January 27, 2022, order that found Jewellery Tower "continued to willfully fail to comply with the court's order regarding the façade contract" and increased the daily fine to $1,000 per day (case No. 1-22-0293). We subsequently granted Jewellery Tower's unopposed motion to consolidate the appeals.

¶ 36                                II. ANALYSIS

¶ 37                    Circuit Court's December 14, 2021, Order

¶ 38    On appeal, Jewellery Tower contends that the court erred when it ordered Jewellery Tower to execute the façade contract. It argues that the court did not have any statutory authority to order the parties to sign a contract and that the court's order violated its fundamental freedom to enter into its own contract and determine its own contractual obligations. It asserts that the court ordered Jewellery Tower to sign a specific contract, with a specific vendor, for a specific amount, none of which Jewellery Tower negotiated or accepted.

¶ 39    Under Rule 304(b)(5), a party may appeal "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). "The review of a contempt finding necessarily requires review of the order upon which it is based." *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968 (2004).

¶ 40    The parties disagree on the standard of review for the circuit court's underlying December 14, 2021, order that required Jewellery Tower to sign a façade contract. The City and

13

MRR assert that we review the circuit court's order that required Jewellery Tower to sign a façade contract for abuse of discretion. The City asserts that we review the decision under the abuse of discretion standard because we are reviewing a decision to grant injunctive relief. See *Tully v. Edgar*, 286 Ill. App. 3d 838, 847 (1997) ("It is well established that a circuit court is endowed with broad discretion to fashion such remedies or to grant such relief as equity may require to remedy a wrong."). Jewellery Tower argues that we review *de novo* the circuit court's order that required it to sign a façade contract because the resolution of the appeal turns on questions of contract and statutory interpretation. See *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.,* 215 Ill. 2d 121, 128 (2005) (stating that *de novo* review is appropriate when resolution of the appeal turns on questions of statutory interpretation).

¶ 41       Jewellery Tower has not asserted a claim that requires us to interpret a contract or a statute, so we disagree with Jewellery Tower's argument that *de novo* review applies. Rather, we must determine whether the court's December 14, 2021, order that required Jewellery Tower to sign a façade contract by December 21, 2021, was proper. We therefore find that the abuse of discretion standard applies. See *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 218 (2008) (reviewing the trial court's interlocutory order granting injunctive relief under the abuse of discretion standard).

¶ 42       "The building code of Chicago is designed to protect the occupants of buildings and the public generally." *City of Chicago v. Larson*, 31 Ill. App. 2d 450, 455 (1961). Further, under section 11-13-15 of the Illinois Municipal Code, municipalities may "enforce zoning and building ordinances in order to promote public health, welfare and safety." *Village of Tinley Park v. Ray*, 299 Ill. App. 3d 177, 179 (1998) (citing 65 ILCS 5/11-13-15 (West 1996)). Under that

section of the Illinois Municipal Code, a court "has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes" of the statute. 65 ILCS 5/11-13-15 (West 2022). Further, "a property owner does not have a right to allow his property to fall into such disrepair as to create a public health and safety risk." *McIlvaine v. City of St. Charles*, 2015 IL App (2d) 141183, ¶ 15.

¶ 43    We initially note that Jewellery Tower does not dispute that the Building is dangerous or unsafe, and even asserts in its reply brief that the circuit court's finding that the Building was "dangerous and unsafe" is not at issue in this appeal and that "the issue on appeal is whether the designation of a building as 'dangerous and unsafe' empowers the court to override a party's freedom of contract and force such party to sign a specific contract, for a specific amount, and with a specific contractor." Indeed, the record shows that the circuit court found the Building unsafe and dangerous in March 2020, and that the conditions had not improved when the court issued its December 14, 2021, order. Specifically, in the court's March 5, 2020, order, it stated that "[t]here exists dangerous and hazardous conditions at the Property that jeopardize the health and safety of the public citizens of the City of Chicago" and that the Building failed to meet the minimum safety standards required by the Code. In Klein & Hoffman's August 13, 2021, critical examination report, it stated that the "facades are generally in poor condition," "the severity and extent of distress is significant," "the exposure to the elements with minimal maintenance repairs over the past several decades has resulted in extensive façade distress," and "the apparent lack of maintenance over the past several decades has resulted in significant water infiltration and continued worsening of distress over that time." Accordingly, the record shows, and Jewellery

Tower does not dispute on appeal, that when the court entered its December 14, 2021, order, the Building's façade was dangerous and unsafe.

¶ 44    Further, we note that in February 2022, Klein & Hoffman concluded that the façade of the Building created a public safety hazard. According to Klein & Hoffman's February 4, 2022, letter contained in the record, "much of the terra cotta is cracked in a manner that has compromised its lateral attachment to sound construction behind," which "makes the terra cotta more susceptible to outward movement and possible dislodgement from the façade." Klein & Hoffman concluded that "[t]his condition creates a fall hazard and is a public safety concern" and "further delay creates an unacceptable public safety concern."

¶ 45    We now turn to Jewellery Tower's contention that the court's December 14, 2021, order violated fundamental principles of contract law and deprived Jewellery Tower of the freedom to enter into its own contract. Jewellery Tower asserts that the court required it to sign a specific contract, with a specific vendor, for a specific amount. We disagree.

¶ 46    The record does not show that the court ordered Jewellery Tower to sign a specific contract. Rather, at the December 14, 2021, hearing, the court was informed that the parties had requested Klein & Hoffman to prepare a proposal and that Klein & Hoffman presented a proposal to the parties on November 29, 2021. The record contains the November 29, 2021, proposal from Klein & Hoffman, which was submitted directly to Jewellery Tower and MRR. The court was informed that MRR and the City were going to sign the Klein & Hoffman proposal, and Jewellery Tower represented that it was ready to move forward with the proposal and it was not opposed to Klein & Hoffman, noting that it had immense experience with the Building. The parties did not present alternative proposals to the court, indicate that they had considered other proposals, or request additional time to seek other proposals. Rather, Jewellery

16

Tower's counsel stated, "I only ask that that [*sic*] phone call will be provided with the proposal before committing" and that it "was ready to move forward with this project provided some of the minor details are ironed out." Jewellery Tower then expressly stated it could sign the contract in one week and requested until December 20, 2021, to sign the contract. The court allowed Jewellery Tower's request and gave Jewellery Tower until December 21, 2021, to sign "[a] final contract." Thus, in the court's December 14, 2021, order, the court gave Jewellery Tower the time it expressly stated it needed to iron out the minor details and sign a façade contract and did not require Jewellery Tower to sign a specific contract.

¶ 47　　　　Further, at the time the court issued its December 14, 2021, order, MRR and the City told the court they were going to sign the façade contract and, as previously discussed, the Building was in a dangerous and unsafe condition. The court found the Building unsafe and dangerous in March 2020, and the case had been pending since the City filed its initial complaint in 2017. And, as previously stated, a "a property owner does not have a right to allow his property to fall into such disrepair as to create a public health and safety risk." *McIlvaine*, 2015 IL App (2d) 141183, ¶ 15. Under these circumstances and considering the condition of the Building, we cannot find that the court erred in its December 14, 2021, order, when it required Jewellery Tower to sign a "[a] final contract" to repair the façade of the Building on or before December 21, 2021, a date requested by Jewellery Tower.

¶ 48　　　　We note that in the court's January 3, 2022, order that denied Jewellery Tower's motion for extension of time to sign the contract, the court found that Jewellery Tower had adequate time for due diligence and to entertain alternate proposals, that Jewellery Tower's motion for extension of time was "further delay" to the project, and that Jewellery Tower and its owner "repeatedly take actions to delay bringing the property into compliance over the past 5

17

years that the case has been pending." In that same order, the court expressly modified the December 14, 2021, order and gave Jewellery Tower until January 7, 2022, to sign the contract, which was a 17-day extension from the initial December 21, 2021, date by which it had to sign the contract.

¶ 49    Indirect Civil Contempt Orders–January 20, 2022, and January 27, 2022

¶ 50    Jewellery Tower contends that the circuit court erred when it found Jewellery Tower in indirect civil contempt for failing to sign the contract in the January 20, 2022, and January 27, 2022, orders. Jewellery Tower argues that its actions with respect to the December 14, 2021, order cannot constitute willful disobedience. It asserts that it was given one week to evaluate a contract that would span more than four years and cost over $15 million and that the court denied its request for an extension and its ability to negotiate the terms of the contract with Klein & Hoffman or to find another contractor.

¶ 51    "A court has the authority to enforce its orders by way of contempt." *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 52. Thus, "a party may be held in civil contempt for willfully failing to comply with a court order." *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 46. "Civil contempt proceedings 'are coercive, that is, the civil contempt procedure is designed to compel the contemnor to perform a specific act.' " *Id.* (quoting *In re Marriage of Levinson*, 2013 IL App (1st) 121696, ¶ 52). "The existence of an order of the trial court and proof of willful disobedience of that order is essential to any finding of indirect civil contempt." *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). "Once the party bringing the contempt petition establishes a *prima facie* case of disobedience of a court order, the burden shifts to the alleged contemnor to prove that the failure to comply was not willful or

18

contumacious and that there exists a valid excuse for his failure." *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 46.

¶ 52    The question of "whether a party is guilty of contempt is a question of fact to be resolved by the circuit court, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *Id.* ¶ 47. " 'A decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or where the court's findings are unreasonable, arbitrary or not based on the evidence.' " *In re Marriage of Knoll & Coyne*, 2016 IL App (1st) 152494, ¶ 50 (quoting *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 43).

¶ 53    Applying these principles, we find that the circuit court's rulings on January 20, 2022, and January 27, 2022, that found Jewellery Tower in indirect civil contempt for failing to sign the façade contract are not against the manifest weight of the evidence.

¶ 54    On December 14, 2021, the court gave Jewellery Tower until December 21, 2021, to sign the contract, as Jewellery Tower had requested until December 20, 2021, to do so. Then, on January 3, 2022, although the court denied Jewellery Tower's motion for extension and found that Jewellery Tower had adequate time for due diligence and to entertain alternate proposals, it modified the December 14, 2021, order and gave Jewellery Tower until January 7, 2022, to sign the contract. Jewellery Tower did not sign a contract by January 7, 2022, so it did not comply with the court's order. Thereafter, the court warned Jewellery Tower that it could be held in contempt and Jewellery Tower continued to fail to comply with the court's order, as the court entered orders on January 11, 2022, and January 13, 2022, that stated "[a]ll orders remain in full force and effect, including the order requiring the facade repair contract to be executed and $4.5 million to be put in escrow." At the hearing on January 19, 2022, Jewellery Tower informed the

19

court that it signed the contract "under protest" and "did not agree to the terms," and the court responded that Jewellery Tower had been ordered three different times to sign the contract. Thus, on January 20, 2022, and January 27, 2022, when the court entered its indirect civil contempt findings, Jewellery Tower had repeatedly failed to comply with the court's order.

¶ 55    Further, the record supports the circuit court's findings that Jewellery Tower's failure to comply with the order was willful. See *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 46 ("Once the party bringing the contempt petition establishes a *prima facie* case of disobedience of a court order, the burden shifts to the alleged contemnor to prove that the failure to comply was not willful or contumacious and that there exists a valid excuse for his failure.").

¶ 56    Jewellery Tower asserts that it refused to execute the contract because it was given an unreasonable period of just one week to review the contract that would have serious implications for its Building and would span more than four years and cost at least $15 million. It asserts it had limited time to review the terms of the contract, evaluate the impact of the work on the Building, or consider alternate proposals from other contractors. However, at the December 14, 2021, hearing Jewellery Tower represented to the court that it was ready to "move forward with this project provided some minor details are ironed out," did not oppose Klein & Hoffman, and asked to sign it by December 20, 2021. Jewellery Tower did not assert that it wanted to seek alternate proposals or that it would need more than one week to sign the contract. The court also expressly found that Jewellery Tower had a history of taking actions that delayed the case, finding in its January 3, 2022, order that Jewellery Tower and its owner "repeatedly take actions to delay bringing the property into compliance over the past 5 years" and stating at the January 25, 2022, hearing that, "[i]t's evident that he delays because he feels like he should be or he can.

20

And enough is enough." In addition, when Jewellery Tower repeatedly failed to comply with the order regarding the façade repair contract, the Building's condition was considered dangerous and unsafe, with the court having made that finding in March 2020.

¶ 57    Accordingly, given Jewellery Tower's representations at the December 14, 2021, hearing, and the court's findings that Jewellery Tower repeatedly took actions to delay the case, which had been pending since 2017, we find that the record supports the circuit court's orders that found Jewellery Tower willfully failed to comply with the court's order. We cannot find an opposite conclusion is clearly apparent or that the findings are unreasonable, arbitrary, or not based on the evidence. Thus, the circuit court's rulings that found Jewellery Tower in indirect civil contempt for failing to execute the façade contract are not against the manifest weight of the evidence. Lastly, we note that to the extent Jewellery Tower asserts that the court erred in the December 14, 2021, order that required Jewellery Tower to deposit $3 million with Klein & Hoffman or an alternate escrow, the argument is forfeited, as Jewellery Tower failed to properly develop the issue in its opening brief. See Ill. S. Ct. Rule 341 (h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *U.S. Bank Trust National Association v. Junior,* 2016 IL App (1st) 152109, ¶ 19 ("Failure to properly develop an argument does 'not merit consideration on appeal and may be rejected for that reason alone.' ") (quoting *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009)). We also note that MRR argues that Jewellery Tower's appeal is futile because it only appealed the December 14, 2021, order, which was only one of the four orders that required it to sign a contract. MRR asserts that the December 14, 2021, order was the only underlying order appealed or even addressed in Jewellery Tower's opening brief and that it has forfeited all arguments related to the other orders that required it to sign a contract, including

21

the orders entered on January 3, January 11, and January 13, 2022. See *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37 (" 'Points not argued are waived' and failure to properly develop an argument and support it with citation to relevant authority results in forfeiture of that argument." (quoting Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)). Jewellery Tower responds in its reply brief that the December 14, 2021, order is "the only order that serves as the basis for the contempt finding." Given our disposition regarding the December 14, 2021, order, we need not address MRR's argument.

¶ 58                                                      III. CONCLUSION

¶ 59        The circuit court did not err in its December 14, 2021, order that required Jewellery Tower to sign a façade contract. The circuit court did not err when it found Jewellery Tower in indirect civil contempt in its orders entered on January 20, 2022, and January 27, 2022. We therefore affirm the judgment of the circuit court.

¶ 60        Affirmed.